```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
GHOLAM ALI AHMADI,                                           :
                                         Petitioner,         :
                                                             :
               -against-                                     :     26-CV-274 (VSB)
                                                             :
JUDITH ALMODOVAR, Director of the New                        :     OPINION & ORDER
York Field Office for U.S. Immigration and                   :
Customs Enforcement (ICE), et al.,                           :
                                                             :
                                         Respondents.        :
                                                             :
------------------------------------------------------------ X
```

Carolyn A. Kubitschek
Lasner & Kubitschek
New York, NY
*Counsel for Petitioner*

Jonaki Singh
U.S. Attorney's Office, Department of Justice, SDNY
New York, NY
*Counsel for Respondents*

VERNON S. BRODERICK, United States District Judge:

      Before me is Gholam Ali Ahmadi's ("Ahmadi" or "Petitioner") petition for a Writ of Habeas Corpus under 28 U.S.C. 2241 challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE") and seeking an order directing the Government to immediately release Petitioner from custody. (Doc. 1 ("Petition" or "Pet.").) Because I find that the Government detained Petitioner pursuant to 8 U.S.C. § 1226 and that his detention violated his due process rights, the Petition is GRANTED, and the Government is ordered to immediately release Petitioner from custody.

1

I.      **Factual and Procedural Background**

Petitioner is an Afghan citizen who is a persecuted minority in Afghanistan. (Pet. ¶¶ 22–23.) Petitioner and his family supported the United States Government's efforts in Afghanistan and the United States-backed Afghan security forces during the American presence in the country. (*Id.* ¶ 24.) "[T]he Taliban murdered Petitioner's mother, who worked as a police officer helping to protect co-ed schools as part of the United States-backed effort to promote education for girls," and severely injured his "brother by running him over with a car." (*Id.*) After the Taliban retook authority in 2021, the Taliban continued to retaliate against Petitioner and his family. (*Id.* ¶¶ 24–25.) Petitioner fled for the United States in April of 2023, entered the United States on April 15 of that year, and was inspected at the border. (*Id.* ¶¶ 25–26.) At that time, the Department of Homeland Security ("DHS") made an individualized custodial determination that Petitioner was not a flight risk or danger to the community and released Petitioner under 8 U.S.C. § 1226. (*Id.* ¶¶ 27–28; Doc. 7-4.) Petitioner moved to New York after he was released from detention in April 2023 and has been living under his own recognizance in New York since then. (Pet. ¶ 30.) Since coming to New York, Petitioner has led a largely productive life and has complied with all ICE regulations and immigration orders. (*Id.* ¶¶ 31-34.) "Petitioner applied for permission to work as soon as he was eligible to do so," and on April 15, 2024, the DHS issued him an employment authorization document. (*Id.* ¶ 31.) Petitioner has been steadily employed at Xinos Construction Corporation, a company based in Queens, New York. (*Id.* ¶ 32.)

Petitioner was charged with a Class E Felony in New York State Court on October 21, 2024, but those charges were dismissed. (*See* Docs. 12, 13.) Petitioner pled guilty to disorderly conduct, a violation, on December 12, 2024. (Pet. ¶ 33.) Petitioner has an active asylum application, with a hearing set for March 2027. (*Id.* ¶ 35.)

2

On December 19, 2025, Respondents called Petitioner in for a check-in appointment on January 13, 2026. (*Id.* ¶ 36.) When Petitioner attended this appointment, he was detained without a hearing, an individualized custodial determination, or a warrant issued by a neutral magistrate. (*Id.* ¶ 37.) On January 13, 2026, Petitioner filed the Petition, asserting that he had been detained without an individualized custodial determination in violation of 8 U.S.C. § 1226. (*See generally id.*) On the same day, I issued an Order to Show Cause why the writ should not issue. (Doc. 3.) The order enjoined Respondents from transferring Petitioner out of the country or the New York City metropolitan area. (*Id.*) On January 15, 2026, I held an initial telephone conference. (*See* Doc. 6.) On January 20, 2026, Respondents filed their response to the Petition, (Doc. 7), accompanied by a declaration from John Tucciarone, (Doc. 8), and a memorandum of law in opposition to the Petition, (Doc. 9). On January 23, 2026, the Petitioner filed his reply in support of the Petition. (Doc. 11.) On January 26, 2026, I held an order to show cause hearing during which I requested additional briefing from the parties regarding Petitioner's flight risk and danger to the community. (Order to Show Cause Transcript at 15:4-15.) On January 30, 2026, the Respondents filed a letter regarding this topic. (Doc. 12.) On February 1, 2026, Petitioner filed a response. (Doc. 13.)

On February 19, 2026, I issued an order, (Doc. 14), requesting that the parties file a joint letter addressing whether there is any basis to distinguish this case from *Han v. Noem*, a recent case in which I issued an Opinion & Order finding that the petitioner was "detained under the discretionary provision of under § 1226(a)," when he had been "residing in the United States with pending immigration proceedings," and found that "his continued detention without any individualized process violate[d] his due process rights, and he must be immediately released

3

from detention," No. 25-CV-10753, 2026 WL 322963, at *7, *3 (S.D.N.Y. Feb. 6, 2026).  On February 24, 2026, the parties filed their joint letter.  (Doc. 15.)

## II.     Legal Standard

Ahmadi brings his Petition pursuant to 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  "When a petitioner brings a habeas petition pursuant to § 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'"  *Dzhabrailov v. Decker*, No. 20-CV-3118, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)).  "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention."  *Lopez v. Sessions*, No. 18-CV-04189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## III.    Discussion

On February 6, 2026, I issued the decision in *Han*, which decided the same statutory issue raised here.  2026 WL 322963, at *4–7.  My decision in *Han* controls the statutory issue in this case, as the Government acknowledges.  (Doc. 15 at 3 ("[T]he Government acknowledges that the Court's decision in *Han* would control the result in this case.").)  I adhere to my prior decision regarding Respondents' statutory authority to detain a petitioner that is living in the United States at the time of detention.  For the reasons stated in *Han* and by several other courts in this District, I conclude that Ahmadi, who has been living in the United States since 2023, was

not subject to mandatory detention under 8 U.S.C. § 1225(b), and instead detained under the discretionary provision of § 1226(a).  2026 WL 322963, at *5–7.

In reaching this conclusion, I join the "overwhelming majority of opinions in this District and others across the country [that] have held that § 1226, not § 1225, governs the process of arresting and detaining noncitizens who are already present in the United States." *Id.* at *4 (collecting cases).  Section 1225(b)(2) applies only to noncitizens actively "seeking admission" to the United States, and not to individuals like Ahmadi who have already entered and have been residing in the country, because such individuals "can't go into a place where [they] already [are]." *Id.* at *5 (alteration in original) (quoting *J.G.O. v. Francis*, No. 25-CV-7233, 2025 WL 3040142, at *3 (S.D.N.Y. Oct. 28, 2025)).  "To assume otherwise would mean that millions of immigrants living in the United States should be mandatorily detained as if they are on the cusp of our nation's borders." *Id.*  Such an interpretation would command the counterfactual result that the process of "inspection," which 8 U.S.C. § 1225 sets out as a process to apply for individuals seeking admission when arriving at the border, *see* U.S.C. § 1225(a)(3) ("All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers."), should be applied to individuals who have been residing without status across the country for sometimes years or decades.  Further, "it would be remiss of me to ignore decades of immigration law that has acknowledged the difference between those at the border and those in the interior of the country." *Han*, 2026 WL 322963, at *7 (citing *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 490 (S.D.N.Y. 2025)).

5

Having determined that Ahmadi is detained pursuant to § 1226(a), I conclude that his detention by the Government, without any individualized consideration, violates his due process rights.  Section 1226(a) requires that the Government make an individualized determination based on (1) whether the noncitizen is a "danger to property or persons" and (2) whether the noncitizen is "likely to appear for any future proceeding" before detaining him.  8 C.F.R. § 1236.1(c)(8).  Here, "there is nothing to suggest that DHS exercised any discretion *at all* in detaining" Ahmadi.  *Lopez Benitez*, 795 F. Supp. 3d at 494 (emphasis in original).  The Government's post-hoc attempts to distinguish this case from *Han* by claiming that Petitioner is a danger to the community because of a dismissed criminal charge in 2024 fails.  *Ipina Hernandez v. Genalo*, No. 26-CV-137, 2026 WL 507739, at *6 (S.D.N.Y. Feb. 22, 2026) ("The March 30, 2025 charges were misdemeanors, a violation, and an infraction related to a vehicular stop, . . . and do not on their face suggest that Petitioner presents any danger to the community. "); *see also Rueda Torres v. Francis,* No. 25-CV-8408, 2025 WL 3168759, at *5 (S.D.N.Y. Nov. 13, 2025) ("The Court cannot credit Respondents' new position as to the basis for [Petitioner's] detention, which was adopted *post hoc* and raised for the first time in this litigation." (citing *Lopez Benitez*, 795 F. Supp. 3d at 486)).

Accordingly, Ahmadi's detention violates his due process rights.  *See Han*, 2026 WL 322963, at *7 (determining that the petitioner's due process rights were violated where there was no evidence of an individualized determination prior to detaining the petitioner); *Tejeda-Mata v. Francis*, No. 26-CV-658, 2026 WL 221276, at *2 (S.D.N.Y. Jan. 28, 2026) (Respondents have violated th[e] fundamental mandate [in the Due Process Clause], as Petitioner has been detained without notice or an opportunity to be heard.  The remedy for this violation is release from

custody."); *Tumba Huamani v. Francis*, No. 25-CV-8110, 2025 WL 3079014, at *9 (S.D.N.Y. Nov. 4, 2025) (determining that the petitioner's due process rights were violated because she was detained "with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond" (internal quotation marks omitted)).

  Finally, I decline the Government's request that I "order a bond hearing before an immigration judge" if I grant the Petition. (Docs. 12, 15.) There is no evidence that ICE made an individualized determination before detaining Ahmadi under § 1226(a). "[A] bond hearing [cannot] retrospectively cure the due process violation, which derived from [Petitioner's] unlawful arrest and detention without the statutorily required exercise of discretion." *Yao v. Almodovar*, No. 25-CV-9982, 2025 WL 3653433, at *11 (S.D.N.Y. Dec. 17, 2025) (citing *Tumba Huamani*, 2025 WL 3079014, at *7–9); *see also Ambroladze v. Maldonado*, 26-CV-00474, 2026 WL 280182, at *3 (E.D.N.Y. Feb. 3, 2026) ("[B]ecause the 'typical remedy' for 'unlawful executive detention' is 'of course, release,' the government's ongoing detention of Petitioner, in the face of yet another complete failure of process, entitles him to immediate release." (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008))). "[T]he harm began when Petitioner was detained without process and continues with each day he remains in custody." *Han*, 2026 WL 322963, at *8. Thus, the Government must immediately release Ahmadi from detention.

### IV.     Conclusion

Therefore, the Petition for a writ of habeas corpus is GRANTED.

Respondents are hereby ORDERED to immediately release Petitioner from custody, to certify compliance with this order by filing an entry on the docket no later than 5:00 p.m. on March 6, 2026, and to notify Petitioner's counsel of where and when Petitioner will be released.

IT IS FURTHER ORDERED that Petitioner "shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a)." *Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511, at *17 (E.D.N.Y. Oct. 6, 2025).  *Cf. Rueda Torres*, 2025 WL 3168759, at *6.

IT IS FURTHER ORDERED that the Government is ENJOINED from denying bond to Petitioner in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b) and from invoking in that proceeding the automatic stay provision at 8 C.F.R. § 1003.19(i)(2), *Rueda Torres*, 2025 WL 3168759, at *6, absent a change in controlling law.

Respondents did not address Petitioner's request for attorney's fees and costs pursuant to the Equal Access to Justice Act as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412 in their Opposition.  Thus, if Petitioner still intends on seeking such relief, Petitioner may file a status letter proposing a briefing schedule for any application for attorneys' fees and costs by May 6, 2026.

SO ORDERED.

Dated:     March 5, 2026
             New York, New York

                                                                                          Vernon S. Broderick
                                                                                           United States District Judge